O

# United States District Court
# Central District of California

| | |
|---|---|
| MIKE SARIEDDINE,<br><br>    Plaintiff,<br><br>  v.<br><br>AREA 51 PHARMS, LLC, JOHN W. SANCHEZ,<br><br>    Defendants. | Case No. 2:19-cv-10715-ODW (MRWx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [12]** |

## I. INTRODUCTION

Plaintiff Mike Sarieddine moves for entry of default judgment against Defendants Area 51 Pharms, LLC ("Pharms") and John Sanchez. (Mot. for Default J. ("Mot.") 1, ECF No. 12.) For the reasons discussed below, the Court **DENIES** Sarieddine's Motion ("Motion").[1]

## II. FACTUAL BACKGROUND

Sarieddine claims to own U.S. Registration No. 5,081,681, for the word mark "AREA 51" in connection with liquids for electronic cigarettes (the "'681 Mark"). (Compl. ¶ 19.) Pharms allegedly owns U.S. Registration Nos. 5,717,084, 5,717,085,

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

and 5,717,114, each for the word mark "AREA 51 PHARMS" in connection with various goods, including "namely, CBD and smoking related products" (collectively, the "PHARMS Marks"). (Compl. ¶¶ 13–15, 21, 26.) Sarieddine initiated this action against Pharms and Sanchez for damages and injunctive relief, alleging that their use of the PHARMS Marks infringes his rights over the '681 Mark under § 32(1) of the Lanham Act and his common-law trademark rights under § 43(a) of the Lanham Act. (Compl. ¶¶ 18–27.) Further, Sarieddine seeks an order from this Court directing the U.S. Patent and Trademark Office ("USPTO") to cancel the registrations of the PHARMS Marks. (Compl. ¶ 35.)

Sarieddine served a Summons and Complaint on Pharms on December 23, 2019 and on Sanchez on January 4, 2020. (*See* Proof of Service, ECF No. 8.) Defendants failed to respond to the Summons and Complaint, and, on February 13, 2020, Sarieddine requested entry of default. (*See* Req. for Entry of Default, ECF No. 9.) The Clerk of the Court entered default the next day. (*See* Default by Clerk, ECF No. 10.) On March 17, 2020, Sarieddine filed his motion for entry of default judgment. (*See* Mot.) On April 22, 2020, the Court took the motion under submission. (ECF No. 13.) However, on May 4, 2020, Defendants attempted to oppose the Motion. (Am. Notice of Mot. ("Opp'n"), ECF No. 16.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to grant default judgment after the Clerk enters default under FRCP 55(a). Fed. R. Civ. P. 55(b)(2). Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the

defaulting party was properly served with notice, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter a default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citation omitted). In exercising its discretion, the Court considers several factors ("*Eitel* Factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted). Generally, upon entry of default by the Clerk, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to the amount of damages. *Televideo Sys.*, *Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV.   DISCUSSION

The Court first considers whether Sarieddine satisfies the procedural requirements, then, if so, whether the *Eitel* Factors weigh in favor of an entry of default judgment.

**A.   Procedural Requirements**

Sarieddine declares in his notice of motion: (1) the Clerk entered default against Defendants on February 14, 2020; (2) default was entered based on the Complaint filed on December 18, 2019; (3) Defendants are neither infants nor incompetent; (4) Defendants are not covered under the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, and (5) service of this motion was not required under FRCP 55(b)(2) because Defendants had not appeared in any capacity. (*See* Notice of Mot. 1, ECF No. 12; Decl.

of Bruno Tarabichi ISO Mot. ("Tarabichi Decl.") ¶¶ 2–6, ECF No. 12-2.) Thus, Sarieddine satisfies the procedural requirements of Local Rule 55-1.

**B.** *Eitel* **Factors**

Once the procedural requirements have been met, district courts consider the *Eitel* Factors in exercising discretion for granting default judgment. *Eitel*, 782 F.2d at 1471–72. For the reasons discussed below, the Court finds that the *Eitel* Factors weigh against granting default judgment.

*1. Possibility of Prejudice to the Plaintiff*

The first *Eitel* Factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default judgment leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Although Defendants had not participated in this action until after this motion was taken under submission despite proper notice, they do presently appear and show an interest in litigating this matter on the merits. (*See* Opp'n.) Thus, Sarieddine is not left without recourse absent a default judgment. Therefore, this factor weighs against default judgment.

*2. Substantive Merits & 3. Sufficiency of the Complaint*

The second and third *Eitel* Factors together "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (citing *PepsiCo*, 238 F. Supp. 2d at 1175.) Although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Sarieddine alleges three claims in his complaint: (1) Infringement of a Registered Trademark; (2) Infringement of a Common Law Trademark; and (3) Cancellation of Federal Registration Under Section 1 of Lanham Act. (Compl. ¶¶ 18–35.) All claims

are premised on a trademark infringement claim, relying on the same alleged course of conduct: offering for sale and selling products with the infringing mark. A claim of trademark infringement on a registered mark may be brought against any private person who, without the consent of the holder of the registered trademark, uses

> in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(1)(a). "Neither actual confusion nor intent is necessary to a finding of likelihood of confusion." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

Section 43 of the Lanham Act provides a cause of action for a plaintiff injured by a common law trademark violation:

> (a) Any person who shall affix, apply, or annex, or use-in connection with any goods or services . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action by . . . any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). Infringement claims brought under 15 U.S.C. §§ 1114 and 1125 are subject to the same test; "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted). In *AMF Inc. v. Sleekcraft Boats*, the Ninth Circuit set forth eight factors a court should consider in determining whether two marks are confusingly similar. 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). The factors are: (1) the strength of the mark, (2) the proximity or relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) the type of goods or services and the

degree of care likely to be exercised by the purchasers, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of product lines. *Id*. at 348–49.

Here, Sarieddine alleges that he has used the mark since 2013, and both he and Defendants sell related products—liquids for electronic cigarettes, on the one hand, and CBD and smoking-related products on the other. (Compl. ¶¶ 10, 25–27.) Furthermore, Sarieddine alleges that Defendants' PHARMS Marks are "nearly identical" to the '681 Mark. (*See* Compl. ¶¶ 21, 26.) Sarieddine also alleges that Defendants' use "has already resulted in instances of actual confusion." (Compl. ¶¶ 21, 26.) Thus, Sarieddine's allegations demonstrate that he can establish his mark is strong, similar to the infringing mark, used in connection with the same category goods as Defendants' products and confused with Defendants' mark. Although, Sarieddine fails to provide allegations as to all the *Sleekcraft* factors, his allegations taken as true demonstrate that "use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc.*, 518 F.3d at 632. Thus, the facts as alleged are sufficient to establish a prima facie case for trademark infringement and false designation of origin.

Finally, the Lanham Act also empowers courts to "determine the right to registration" and "order the cancellation of registrations . . . with respect to any party to the action." 15 U.S.C. § 1119. Priority of use along with likelihood of confusion is one ground for invalidation. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir. 1996). If a party can show that it "used the mark in commerce first, then the registration may be invalidated." *Id*. at 1220. Here, Sarieddine alleges that he used the "AREA 51" mark in 2013, five years before Defendants used the mark. (Compl. ¶¶ 10, 12.) As Sarieddine alleges a priority of use and likelihood of confusion, as discussed above, he adequately alleges a valid cancellation claim.

In sum, Sarieddine has sufficiently alleged trademark infringement and cancellation claims on which he may recover. The second and third *Eitel* Factors weigh in favor of default judgment.

### 4. The Sum of Money at Stake

The fourth *Eitel* Factor balances "the amount of money at stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471. The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of the defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). When a defendant is found liable for trademark infringement "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Depending on the circumstances, the Court may award in damages any amount greater than but no more than three times the actual damages incurred. *Id.* Alternatively, the Court may "in its discretion enter judgment for [an adequate] sum as the court shall find to be just." *Id.*

In his Complaint, Sarieddine seeks damages and Defendants' profits but fails to request any specific amount. (Compl. at 10.) In his Motion, Sarieddine seeks $25,000 in statutory damages and $4735 in attorneys' fees and costs. (Mot. 4.) But Sarieddine fails to allege his actual damages in his Complaint, Motion, or any supplementary declaration. Based on the proffered allegations, the Court cannot determine that the amount at stake is proportionate to the harm alleged. Thus, this factor does not weigh in favor of granting default judgment.

### 5. Possibility of Dispute

The fifth *Eitel* Factor considers the possibility of dispute regarding material facts. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendants have attempted to oppose, albeit belatedly, Sarieddine's Motion and raise several factual disputes in its response to the Motion. (*See* Opp'n.) For example, Defendants assert that their trademark is in a distinct good category from that of Sarieddine and they lacked knowledge of

Sarieddine's trademark. (Opp'n 2–3.) Thus, this factor weighs against default judgment.

### 6. *Possibility of Excusable Neglect*

The sixth *Eitel* Factor considers whether Defendants' default is the result of excusable neglect. *Eitel*, 782 F.2d at 1470. Defendants assert that they were "led to believe that the action would be dropped" and Sarieddine filed the suit due to Defendants financial vulnerability and inability to defend. (Opp'n 1–2.) Thus, the Court finds that the default is due to excusable neglect. Thus, this factor weighs against default judgment.

### 7. *Policy Favoring Decision on the Merits*

Finally, "default judgments are ordinarily disfavored. Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. As Defendants have appeared and seem interested in prosecuting this case on the merits, this factor weighs against default judgment.

In sum, the *Eitel* Factors weigh against default judgment. Therefore, the Court **DENIES** Sarieddine's request for entry of default judgment.

### C. **Setting Aside Default**

Rule 55(c) gives a district court the discretion to set aside entry of default upon a showing of good cause. Fed. R. Civ. P. 55(c). "The court can set aside entries of default sua sponte." *New Milani Grp., Inc. v. Aslani*, No. 17-cv-02791 SJO (PJWx), 2017 WL 8220225, at *1 (C.D. Cal. June 9, 2017) (citations omitted). In assessing whether good cause exists to set aside default, district courts look at three factors: (1) whether the plaintiff will be prejudiced; (2) whether culpable conduct of the defendant led to the default; and (3) whether the defendant has a meritorious defense. *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (citations omitted). Addressing each factor in turn, the Court finds good cause for setting aside default.

The first factor asks whether the plaintiff will be prejudiced by relieving the defendant from default. *Id*. at 1111. "To be prejudicial, the setting aside of a judgment

must result in greater harm than simply delaying resolution of the case. Rather, the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (alteration in original), *overruled on other grounds by Egelhoff v. Egelhovv ex rel. Breiner*, 532 U.S. 141 (2001). As previously discussed, apart from delayed resolution of the case, the Court sees no potential harm to Sarieddine. "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment." *TCI Grp. Life Ins. Plan*, 244 F.3d at 701. Therefore, the Court finds Sarieddine will not be prejudiced.

Next, the Court assesses whether Defendants' culpable conduct led to the default. *See id.* at 696. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis added). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith . . . ." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (citation omitted). Here, Defendants assert that they have engaged in several discussions with Sarieddine regarding this matter and were led to believe that this action would be dropped. Defendants have not intentionally failed to answer. Therefore, Defendants conduct is not culpable.

Finally, the Court evaluates whether Defendants have a meritorious defense. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 699. The standard required to satisfy this factor is to "allege sufficient facts that, if true, would constitute a defense." *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1094. "[D]efendant[s] need not show that [they] will prevail, only that there is a bona fide chance that such a result will occur if the factual allegations are true." *New Milani Grp., Inc.*, 2017 WL 8220225, at *2 (citation omitted). Here, Defendants dispute certain facts Sarieddine proffers to prove

trademark infringement claims. (*See* Opp'n.) For example, Defendants assert that their trademark is in a distinct good category from that of Sarieddine and they lacked knowledge of Sarieddine's trademark. (Opp'n 2–3.) Thus, Defendants have adequately demonstrated that that there is a bona fide chance that they may prevail.

After considering the three factors, the Court finds good cause to **SET ASIDE DEFAULT** as to all Defendants.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Sarieddine's Motion and **SETS ASIDE DEFAULT** as to all Defendants. The Court informs Defendants that although Mr. Sanchez may appear pro se, Pharms **MUST** be represented by an attorney. Failure to retain counsel may result in entry of default for Pharms. The Court grants Defendants 40 days to file an answer.

**IT IS SO ORDERED.**

August 6, 2020

_____
         **OTIS D. WRIGHT, II
    UNITED STATES DISTRICT JUDGE**